```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

LISA BUTCHER,
individually and as natural
guardian of Jaron A. Butcher,
an infant,

      Plaintiff,

v.                                Civil Action No. 14-28979

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the motion for summary judgment filed by the United States of America on January 25, 2016.

### I. Background

Jaron Butcher was born on August 16, 2003, after doctors induced labor in his mother, plaintiff Lisa Butcher. Jaron suffers from brain damage, and Ms. Butcher alleges that Jaron's brain damage was caused during Jaron's delivery and birth. Specifically, Ms. Butcher alleges that the complications which led to Jaron's brain damage were the result of the negligence of Dr. Christopher Wiltcher, an obstetrician employed by the New River Women's Health and Birth Center ("the Center").

The parties agree that the Center -- and through it, Dr. Wiltcher -- was at all relevant times "a Health Center Program grantee under 42 U.S.C. § 254b and a deemed Public Health Service employee under 42 U.S.C. § 233(g)-(n))." See Plaintiff's Exhibit ("Pl. Ex.") # 5, at pp. 268-72. Consequently, under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346, 2671, et seq., the proper defendant in this civil action is the United States of America, through the federal Department of Health and Human Services ("HHS").

Mrs. Butcher presented a claim for damages to HHS on April 17, 2014. Meanwhile, Ms. Butcher commenced this action on November 25, 2014. On December 3, 2014, HHS denied the claim. Her complaint consists of a single count of negligence against the United States. The United States moved for summary judgment on January 25, 2016, contending that the claim is time-barred.

Jurisdiction over this case is proper inasmuch as the district courts of the United States "shall have exclusive jurisdiction of civil actions on claims against the United States[] for money damages. . . ." 28 U.S.C. § 1346(b)(1).

II. Summary judgment standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact

2

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same).

When examining the record, the court must neither resolve disputes of material fact nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Along those lines, inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Discussion

The United States contends that Ms. Butcher's claim is barred by the two year statute of limitations applicable to suits brought under the FTCA. Ms. Butcher, in response,

3

maintains that West Virginia statutory law provides the applicable limitations period, although the parties agree that the FTCA applies generally.  In the alternative, she contends that equitable tolling is appropriate in this case.

### A. Background

On November 19, 2003, doctors at West Virginia University performed an MRI on Jaron, which showed clear signs of brain damage.  See Defendant's Exhibit ("Def. Ex.") # 1, MRI Report, at p. 166.  During her deposition, Ms. Butcher testified that she knew that Jaron's brain damage had occurred at some point before the November MRI.  See Def. Ex. # 1, Lisa Butcher Dep. 62:10-66:24.  Jeffrey Butcher, Jaron's father, also testified that he learned Jaron had brain damage through the November MRI.  Moreover, during Mr. Butcher's deposition, the following exchange occurred:

> Q. At some point though at about that time in 2003 or 2004, it was your understanding that the brain damage was due to the events at birth; is that correct?
> A. Yes.

Def. Ex. # 1, Jeffrey Butcher Dep. 17:6-18:6.

This testimony is borne out by other evidence in the record, and nowhere contradicted.  Thus, for instance, at an

appointment on January 19, 2004, an audiologist examining Jaron made the following report:

> His mother reported that she had a full-term pregnancy; however, Jaron had a traumatic delivery, which involved the umbilical chord [*sic*] wrapped around his neck on two occasions. She also reported that he had a bacterial infection. Jaron has been diagnosed with brain damage in areas affecting his vision, speech, and language.

Def. Ex. # 1, Audiology Report, at p. 167. On January 20, 2004, Lisa Butcher applied for treatment at Children's Specialty Care in Charleston, West Virginia. See Def. Ex. # 1, Application for Care, at pp. 12-13. In the application, Mrs. Butcher specified, under the section titled "Concerns/Medical Issues," that "Jaron ha[d] brain damage and seizure disorder." Id. at p. 12. Further, the Butchers claim to have spoken to a lawyer in 2004 about bringing a claim for Jaron's brain injuries. See Pl. Ex. 4, Lisa Butcher Dep. 118:3-119:11. The lawyer to whom they first spoke recommended that they consult a medical malpractice lawyer. Id. at 119:4-8. The Butchers decided not to do so. Id. at 119:21-120:3.

The record is clear that the Butchers were aware by late 2003 or early 2004 that Jaron suffered from brain damage, and that it was apparently caused during his delivery and birth. Ms. Butcher first presented her claim to HHS, however, on April 17, 2014.

## B. The applicable statute of limitations

The parties agree that the Center is, in fact, a federally supported healthcare facility, and therefore that Ms. Butcher's negligence claim is governed by the FTCA, 28 U.S.C. §§ 1346, 2671, et seq. See Def. Mem., at p. 1; Pl. Resp., at p. 1 (both describing the Center as a "federally supported health clinic"). Nevertheless, Ms. Butcher maintains that West Virginia law governing medical malpractice actions, rather than the FTCA, provides the applicable statute of limitations in this case, as well as the relevant substantive law. See Pl. Resp., at pp. 3-5 (citing W. Va. Code § 55-7B-6).

To be sure, state law -- here, the West Virginia Medical Professional Liability Act (the "MPLA"), W. Va. Code § 55-7B-1, et seq. -- governs the substantive aspects of Ms. Butcher's claim. See 28 U.S.C. §§ 1346(b)(1), 2674; see also Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991) and Portis v. United States, 483 F.2d 670, 672-73 (4th Cir. 1973) (both observing same). In other words, if the plaintiff would have a claim under state law against a similarly situated private person, the plaintiff usually has a claim against the United States. See United States v. Muniz, 374 U.S. 150, 153 (1963) (citing 28 U.S.C. § 2674).

The West Virginia MPLA's statute of limitations, however, does not apply to actions under the FTCA.[1] Instead, although state law governs the underlying claim, "federal law defines the limitations period[.]" Miller, 932 F.2d at 303 (citing Washington v. United States, 769 F.2d 1436, 1437-38 (9th Cir. 1985)); see also Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011) (same) (quoting Miller, 932 F.3d at 303). Indeed, Congress specifically enacted a statute of limitations applicable to FTCA claims. See 28 U.S.C. § 2401(b). Accordingly, notwithstanding Ms. Butcher's contention to the contrary, tort claims brought under the FTCA are subject to the statute of limitations provided by 28 U.S.C. § 2401(b). Section 2401(b) provides as follows:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

---

[1] The MPLA provides, in pertinent part, as follows:

> (b) A cause of action for injury to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years of the date of such injury, or prior to the minor's twelfth birthday, whichever provides the longer period.

W. Va. Code § 55-7B-4(b).

28 U.S.C. § 2401(b).

Where the federal government waives its sovereign immunity, as by the FTCA, suits brought pursuant to such waiver must proceed in strict compliance with the terms of the waiver, and consequently the FTCA is in turn construed strictly. See United States v. Kubrick, 444 U.S. 111, 117-118 (1979) (citing Soirano v. United States, 353 U.S. 270, 276 (1957)); see also id. at 117 ("Section 2401(b) . . . is the balance struck by Congress in the context of tort claims against the Government[,] and we are not free to construe it so as to defeat its obvious purpose [--] the prompt presentation of claims.") (citing Campbell v. Haverhill, 155 U.S. 610, 617 (1985)). Accordingly, any provisions of state law that purport to toll the FTCA's statute of limitations -- for instance, on the grounds of infancy -- do not have that effect when the claim is brought under the FTCA. See Jastremski v. United States, 737 F.2d 666, 669 (7th Cir. 1984) (citing Leonhard v. United States, 633 F.2d 599, 624 (2d Cir. 1980) (parents must bring minor's claim in a timely fashion because minority does not toll the FTCA statute of limitations), cert. denied, 451 U.S. 908 (1981)). Rather, claims must be presented in strict compliance with 28 U.S.C. § 2401(b). See Kubrick, 444 U.S. at 117.

Accrual, like the statute of limitations itself, is a question of federal, not state, law. Under federal law, "'the standard rule [is] that [a claim accrues] when the plaintiff has a complete and present cause of action.'" Wallace v. Kato, 549 U.S. 384, 388 (2007) (quoting Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)); see also Kubrick, 444 U.S. at 115 (medical malpractice claim brought under the FTCA accrues when the plaintiff first knows, or reasonably should know, of both the injury and its cause); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (A claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."). Once a plaintiff knows of the facts of the harm allegedly done, she has a duty to exercise due diligence in investigating its cause and commencing any potential cause of action. Osborn v. United States, 918 F.2d 724, 731 (8th Cir. 1990); see also T.L. ex rel. Ingram v. United States, 443 F.3d 956, 962-63 (8th Cir. 2006) ("Ingram had a duty under the law to seek advice about possible legal action at the time she knew of T.L.'s brain injury, not only after the full effects of the brain damage were manifested.").

Here, the Butchers' knowledge of the existence and likely or apparent cause of Jaron's brain damage triggered the

9

accrual of Ms. Butcher's claim against the United States. At that point, she was required to exercise due diligence to timely file an administrative claim under the FTCA, and to otherwise comply with 28 U.S.C. § 2401(b). See McKewin v. United States, No. 92-1770, 1993 WL 389568 (4th Cir. Oct. 4, 1993) (claim accrued approximately 8 months after child was born because parents admitted they knew at least by that date that their child had brain damage caused during delivery); see also T.L. ex rel. Ingram, 443 F.3d at 962-63 (8th Cir. 2006) (plaintiff's claim accrued when she learned that her child had experienced brain damage during delivery). But it is not disputed that Mrs. Butcher did not present her claim for damages to HHS until April 2014. The record shows, as discussed above, that this was approximately ten years after the claim accrued. The remaining question, then, is whether she can be said to have acted diligently in investigating and prosecuting her claim.

### C. Due diligence and equitable tolling

1.

As previously noted, Ms. Butcher contends that equitable tolling of the statute of limitations in this case is appropriate. Specifically, she asserts that she reasonably relied on the apparent "private status" of the Center, as

opposed to its actual "federal status," and that she otherwise exercised due diligence in proceeding with this civil action.

The Supreme Court has held that "equitable tolling applicable to suits against private defendants should also apply to suits against the United States." John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 137 (2008) (quoting Irwin v. Dep't of Veterans' Affairs, 498 U.S. 89, 95-96 (1990)); see also United States v. Wong, --- U.S. ---, 135 S. Ct. 1625, 1638 (2015) (equitable tolling appropriate only if "circumstances warrant") (citing Irwin, 498 U.S. 89). Generally, equitable tolling will stop the running of the statutory clock where the party seeking tolling demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Equitable tolling has thus been applied "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action," Kokotis v. United States, 223 F.3d 275, 280-81 (4th Cir. 2000), and where "extraordinary circumstances beyond [a plaintiff's] control made it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (citing Alvarez-Machain v. United States, 107 F.3d 696, 700 (9th Cir. 1996)). On the other hand, equitable tolling has been denied where the

plaintiff's failure to file on time is his or her own fault, even if it is the product of mere "blameless ignorance." See Gould v. United States Dept. of Health and Human Svcs., 905 F.2d 738, 745-46 (4th Cir. 1990) ("The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable."); see also Schappacher v. United States, 475 F. Supp. 2d 749, 755-56 (S.D. Ohio 2007) (no equitable tolling based on ignorance of hospital's federal status where plaintiff made no inquiry and there was no evidence that doctor affirmatively misled the plaintiff).

2.

Here, as discussed above, the Butchers were aware by early 2004 that Jaron had suffered brain damage during birth. Among other things, Mr. and Mrs. Butcher provided medical history and filled out documents in 2004 demonstrating that they possessed such knowledge.[2] See Def. Mem., p. 6. The evidence further indicates that the plaintiffs were advised in 2004 -- quite soon after learning about Jaron's brain damage -- to seek the advice of a medical malpractice lawyer. They decided not to

---

2  While it may be the case, as the plaintiffs assert, that Dr. Wiltcher did not inform them that Jaron's complicated delivery carried a risk that he suffered brain damage, this does not explain the plaintiffs' failure to initiate this action before 2014. Cf. Gould, 905 F.2d at 745-46.

do so. Subsequently, they did not investigate or pursue their potential claim until ten years after it had accrued.

To begin, the fact that the plaintiffs claim to have received erroneous legal advice regarding the applicability of the MPLA's statute of limitations does not warrant equitable tolling. See Pl. Resp., at p. 6. The record is devoid of any objective evidence of this assertion -- instead, the record unequivocally shows that the Butchers decided to forego a medical malpractice claim against the Center because Jaron's condition appeared to be improving. See Def. Ex. # 1, Lisa Butcher Dep. 118:19-120:3, Ex. # 2, Jeffrey Butcher Dep. 18:13-20:19. But even if the Butchers did receive such advice, erroneous legal advice is not an independently sufficient basis for applying equitable tolling. See Kubrick, 444 U.S. at 124 (holding that "incompetent" or "mistaken" legal advice does not justify tolling); Harris v. Hutchinson, 209 F.3d 325, 331 (4th Cir. 2000) (same). Ms. Butcher has provided no reason for concluding that it ought to be sufficient here.

Nor does Ms. Butcher's assertion that the Center misrepresented its federal status justify equitable tolling. According to Ms. Butcher, the Center's website states that the Center is a "private, nonprofit organization[.]" See Pl. Ex. # 5, at pp. 268-72. Ms. Butcher points to this statement as

13

evidence of their assertion that the Center concealed its federal status. However, those same pages contain the following statement, albeit towards the bottom:

> This health center is a Health Center Program grantee under 42 U.S.C. 254b and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n).

Pl. Ex. # 5, at pp. 268-72. It is difficult to see, and Ms. Butcher does not explain, how her failure to investigate the meaning of this sentence squares with her claim to have proceeded with due diligence. Cf. Bohrer v. City Hospital, Inc., 681 F. Supp. 2d 657, 678-79 (N.D. W. Va. 2010) (no equitable tolling where plaintiff could have discovered federal status simply by asking clinic).

"The statute of limitations under the FTCA commences to run from the date of accrual and does not wait until a plaintiff is aware that an alleged tort-feasor is a federal employee." Gould v. United States Dep't of Health and Human Svcs., 905 F.2d 738,745 (4th Cir. 1990), cert. denied, 498 U.S. 1025 (1991). The tort-feasor need not unequivocally announce its federal status, Gould, 905 F.2d at 745-46, although here it comes close to doing so by the announcement on its website cited by the plaintiff.

14

In sum, although Ms. Butcher claims that she exercised due diligence in this case, the record belies that claim. She has not adequately explained the failure to investigate, nor has she asserted any plausible basis for concluding that the Center misrepresented or disguised its status as a federal entity. Regrettably, these deficiencies preclude the application of equitable tolling in this case. Consequently, the plaintiff's claim is time-barred, and the United States is entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that the United States' motion for summary judgment be, and it hereby is, granted.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

DATED: March 14, 2016

John T. Copenhaver, Jr.
United States District Judge